**E-FILED**
Monday, 19 December, 2005  08:32:23 AM
Clerk, U.S. District Court, ILCD



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| **OHIO FARMERS INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **Counter-Defendant,** ) | |
| ) | |
| **v.** ) | **Case No. 03-2138** |
| ) | |
| **RONALD HOTLER, individually,** ) | |
| **MICHAEL J. MINER, individually, HAROLD** ) | |
| **MINER, individually and d/b/a MINER** ) | |
| **FARMS, JEAN MINER, individually and** ) | |
| **d/b/a MINER FARMS, and BETTY J.** ) | |
| **FRIMML, WILLIAM P. GILMORE, JR.,** ) | |
| **individually, and DEUSCHLE-GILMORE** ) | |
| **INSURANCE AGENCY, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |
| ) | |
| **RONALD HOTLER, individually,** ) | |
| **MICHAEL J. MINER, individually, HAROLD** ) | |
| **MINER, individually and d/b/a MINER** ) | |
| **FARMS, JEAN MINER, individually and** ) | |
| **d/b/a MINER FARMS,** ) | |
| ) | |
| **Third Party Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **WILLIAM P. GILMORE, JR., individually and** ) | |
| **as agent for DEUSCHLE-GILMORE** ) | |
| **INSURANCE AGENCY, INC., and** ) | |
| **DEUSCHLE-GILMORE INSURANCE** ) | |
| **AGENCY, INC.,** ) | |
| ) | |
| **Third Party Defendants,** ) | |
| **Counter-Plaintiffs.** ) | |

## OPINION

This matter is before the court on Ohio Farmers Insurance Company's Motion for Summary Judgment on Declaratory Issues (#65). For the reasons that follow, the motion for summary judgment is DENIED.[1]

## BACKGROUND

The motion for summary judgment currently pending before this court pertains only to certain declaratory issues in the context of this rather factually complex matter. Therefore, some background facts are necessary for an understanding of the issues currently before the court. Plaintiff, Ohio Farmers Insurance Company, filed this declaratory action in August 2003. In its complaint, Ohio Farmers seeks a judgment that is not required to indemnify or defend Defendants Ronald Hotler, Michael Miner, Harold Miner, Jean Miner, or Miner Farms in an underlying state action filed by Defendant Betty Frimml. Frimml filed the state court complaint as a result of personal injury and property damage sustained after an automobile accident which occurred on October 29, 2002. Frimml's complaint alleges that Hotler negligently drove a truck which collided with Frimml's vehicle. Frimml further alleges that Hotler was employed by Michael Miner, Harold Miner, Jean Miner and Miner Farms at the time of the accident and they are thus liable for Hotler's actions.

At the time the accident occurred, Ohio Farmers had issued a farm package insurance policy which included commercial general liability insurance, to Miner Farms, Harold Miner, and Jean Miner. The parties dispute whether Michael Miner was also insured under the policy. Ohio Farmers

---

[1] This court notes that Defendant Frimml filed a Motion to Strike (#84) the motion for summary judgment filed by Ohio Farmers. Because this court is denying the motion for summary judgment, the motion to strike is denied as MOOT.

alleges that Hotler was employed by Miner, Inc., a corporation owned by Michael Miner, at the time of the accident rather than by Miner Farms. Ohio Farmers further alleges that the truck driven by Hotler was owned by Iroquois Trucking, a corporation also owned by Michael Miner. Finally, Ohio Farmers alleges that certain irregularities took place during the course of the insurance application process for the coverage at issue in this case which preclude coverage under the terms of the policy.

On May 17, 2004, Michael Miner, Inc., Harold Miner, Jean Miner, Michael Miner, and Miner Farms filed an Amended Third-Party Complaint (#38) against William P. Gilmore and the Deuschle-Gilmore Insurance Agency ("DGIA"). In their complaint, they allege that Gilmore and DGIA procured the comprehensive farm policy from Ohio Farmers and bring claims for negligence and breach of contract, alleging that Gilmore and DGIA failed to properly obtain insurance from Ohio Farmers. On February 10, 2005, Ohio Farmers also filed an Amended Complaint (#48) against Gilmore and DGIA for negligence, alleging that as a result of this negligence Ohio Farmers was induced to issue a policy without being fully informed as to the risks associated with issuing the policy. Finally, on May 31, 2005, Gilmore and DGIA filed an Amended Counterclaim (#58) against Ohio Farmers alleging Ohio Farmers was negligent in failing to properly and professionally handle the farm policy.

In its Motion for Summary Judgment, Ohio Farmers seeks a ruling on the following preliminary issues in this case: (1) a finding that DGIA acted as an agent for Defendants by procuring a farm policy package from Ohio Farmers; (2) a declaration that the Defendants made several misrepresentations to Ohio Farmers in procuring the farm package policy, namely with regard to the ownership of the truck driven by Hotler, the intended use of the truck, Hotler's driving record, and that Harold and Jean Miner signed the applications for insurance; and (3) a declaration

that these representations were material misrepresentations.  This court has carefully reviewed the submissions of all the parties and finds as follows.

FACTS[2]

On January 1, 2002, Ohio Farmers entered into an agency agreement with DGIA.[3]  This agreement contains provisions allowing DGIA to "bind coverage" for Ohio Farmers and refers to DGIA as an "agent."   DGIA represents a variety of insurance companies in addition to Ohio Farmers, including Pekin Insurance, Indiana Insurance, Auto Owners Insurance, Progressive, Safeco, and Dairyland.  Harold and Jean Miner were customers of DGIA since 1992.  From August 1992 to 2002, they had a policy with Safeco/American States.   When their policy with Safeco/American States was not renewed in 2002, they assumed that DGIA would obtain insurance which would provide the same coverage.  The policy issued by Ohio Farmers lists Harold and Jean Miner and Miner Farms (hereinafter collectively referred to as "the Miners") as insureds.   An endorsement to the policy lists Miner, Inc. as an additional insured.

When the Miners applied for farm package insurance with Ohio Farmers, Gilmore signed Harold Miner's name on the Personal Umbrella Policy Application and a female employee of DGIA signed Jean Miner's name on the document.  This application submitted to Ohio Farmers states as follows above the space allotted for the applicants' signatures: "I have read this application and declare to the best of my knowledge and belief all of the foregoing statements are true.  As these

---

[2]  This court notes that Ohio Farmers did not file a response to DGIA's Statement of Additional Material Facts.  Therefore, this court will consider these facts admitted pursuant of Local Rule 7.1(D).

[3]  This agency agreement was in effect at the time the Miners' application for coverage was submitted by DGIA to Ohio Farmers.

statements are offered as an inducement to the Company, I request the Company to issue the insurance in reliance thereon."  On August 29, 2002, Bonnie Hanzie, an underwriter for Ohio Farmers, informed DGIA that a "completed and signed" application would be needed in order for her to underwrite the risk.  In addition to an Acord Business Auto Application, an Acord Umbrella Application, and the Personal Umbrella Application, the Miners also submitted a Farm Application. The Farm Application contains a signature line for the applicant, but no signature is affixed.  Rather, the signature line reads, "On File w/ Agency." [4]

In the Acord Business Auto Application for the policy issued by Ohio Farmers, the truck driven by Hotler which was involved in the accident with Frimml ("International truck") was listed as a farm vehicle.  The application also asked, "With the exception of encumbrances, are any vehicles not solely owned by and registered to the applicant?"  The answer indicated on the application is "No."  The International truck had been purchased in June 2001 by Iroquois Truck, Inc., a corporation owned solely by Michael Miner.  The International truck remained titled to Iroquois Truck until February 6, 2003.  However, DGIA has produced an invoice indicating the International truck was sold to Harold Miner by Iroquois Truck on July 12, 2001.  Michael Miner testified in his deposition that Harold Miner paid cash for the vehicle.  However, Harold Miner does not recall when he purchased the truck, how he paid for the truck, or how much he paid for the truck. When the International truck became titled to Harold Miner on February 6, 2003, the title document was mailed to Michael Miner's address.

In the Acord Business Auto Application, the Miners listed  the International truck and only

---

[4]  The Farm Policy was eventually issued despite the absence of a signature on the Application.

placed an "X" in the box labeled "Farm" under the heading "Use."  The box labeled "Service" also had a hand made checkmark in it.  However, the "Commercial" box was not marked.  Michael Miner operated a grain vacuuming business through Miner, Inc.  In performing this work, Michael Miner would vacuum grain from other farms for transport and used the International truck for such tasks.  Hotler worked for Miner, Inc. and would run the grain vacuum.  On the date of the accident, Hotler was issued a check for $300 from the account of Miner Farms.

The policy contained an endorsement for Custom Farming Liability Coverage.  This endorsement lists "Plant/Combin/Vac" as the "Types of Custom Farming."  The endorsement states that coverage for bodily injury, property damage liability and medical payments is extended to these operations.  Hanzie testified that "Vac" refers to the vacuuming of grain bins.  The International truck is listed in the policy as being provided coverage under "Covered Auto Symbol" "01."  The Business Auto Coverage portion of the policy defines a symbol "01" vehicle as "any auto" without regard to ownership of the vehicle.  Furthermore, the International truck is listed under the heading "Schedule of Covered Autos You Own" on the Business Auto Coverage Part of the policy.

On the portion of the Personal Umbrella Application inquiring whether any listed drivers had been convicted of any traffic violations in the past three years, the Miners' application indicated "No."  On the Acord Business Auto Application, the Miners were also asked if any drivers had moving traffic violations, and the Miners indicated, "No."  While Hotler was eventually listed as a driver on this application, the names were not added until after August 5, 2002.  Hotler's name was added at that time by Hanzie based upon information provided to her by DGIA.

Prior to the Miners' application for insurance, Hotler had been convicted for reckless driving in Illinois in 1998, and his license in Indiana had been suspended as a result of various moving

-6-

violations of traffic law.  Hanzie testified in her deposition that if auto coverage is being requested, Ohio Farmers requests Driver Record Service Reports on all proposed insured drivers.   On September 4, 2002, Ohio Farmers obtained the Driver Record Service Report related to Hotler and learned of the reckless driving citation. Ohio Farmers still issued the policy to the Miners on October 3, 2002.  Hanzie further testified that she was not aware at the time that a reckless driving conviction can result from plea agreements after arrests for driving while intoxicated.  Hanzie also indicated that a person's driving record can prevent coverage if it is bad enough.  Michael Miner was not aware of Hotler's driving record at the time of the application, and therefore did not notify DGIA of the violation.

The policy issued to the Miners contained the following language: "This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form.  It is also void if you or any other 'insured,' at any time, intentionally conceal or misrepresent a material fact concerning: a.  This Coverage Form; b.  The Covered 'auto;' c.  Your interest in the covered 'auto;' or d.  A claim under this Coverage Form."

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  In reaching this decision, the court must consider the evidence in the light most

favorable to the party opposing summary judgment.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).  The burden of establishing that no genuine issue of material fact exists rests with the movant.  <u>Jakubiec v. Cities Serv. Co.</u>, 844 F.2d 470, 473 (7th Cir. 1988).

Ohio Farmers first seeks summary judgment on the issue of whether DGIA was operating as an insurance broker on behalf of the Miners rather than as an agent of Ohio Farmers.[5]   Under Illinois law, "'[a] broker is an individual who procures insurance and acts as a middleman between the insured and the insurer, who solicits insurance business from the public under no employment from any special company and who, having secured an order, places the insurance with the company selected by the insured, or in the absence of any selection by the insured, with a company he selects himself.'"  <u>Pekin Life Ins. Co., v. Schmid Family Irrevocable Trust</u>, 834 N.E.2d 531, 535-36 (Ill. App. Ct. 2005), <u>quoting</u> <u>Zannini v. Reliance Ins. Co. of Ill., Inc.</u>, 590 N.E.2d 457, 463 (Ill. 1992).  On the other hand, "[a]n agent is an individual who has a fixed and permanent relation to the companies he represents and who has certain duties and allegiances to such companies."  <u>Pekin Life</u>, 834 N.E.2d at 536, <u>quoting</u> <u>Zannini.</u>, 590 N.E.2d at 463.  A determination as to whether a person is an agent for the insured, the insurer, or both is generally a question of fact unless "the evidence clearly shows the person is the agent of the insured."  <u>Allied Am. Ins. Co. v. Ayala</u>, 616 N.E.2d 1349, 1361 (Ill. App. Ct. 1993).

Ohio Farmers argues that this court should analyze the issue of whether DGIA was acting as a broker for the Miners or as its agent using four factors employed by Illinois courts.  These four factors are: "(1) who first set the agent in motion; (2) who controlled the agent's action; (3) who paid the agent; and (4) whose interests the agent was protecting."  <u>Farmers Auto. Ins. Ass'n v. Gitelson</u>,

---

[5]  The parties do not dispute that Illinois law governs this matter.

801 N.E.2d 1064, 1068 (Ill. App. Ct. 2003).  However, where an insurance agreement extends express agency authority to a broker or agent, courts do not undertake this analysis.  Zannini, 590 N.E.2d at 463; Perzy v. Intercargo Corp., 827 F. Supp. 1365, 1374 (N. D. Ill. 1993).  When there is such express authority, an individual is an agent of the insurer "to the extent the individual acts pursuant to the express authority granted in an agency agreement." Perzy, 827 F. Supp. at 1374.

Ohio Farmers entered into an agency agreement with DGIA.  The agency agreement provides under the heading, "Extent of the Agent's Authority" that DGIA "shall have authority to solicit applications, bind coverage, countersign, deliver, and endorse insurance policies."  Thus, pursuant to Zannini, it is apparent that Ohio Farmers extended express authority to DGIA and this court should not undertake the four prong analysis.  Ohio Farmers asserts that DGIA acted outside its authority in submitting Miners' application for insurance to Ohio Farmers because the application contained misrepresentations.  However, this court cannot find based upon the evidence presented before it that DGIA took an active role in any alleged misrepresentation or that DGIA's action were outside the scope of the express authority granted in the agency agreement.  Therefore, summary judgment is not appropriate on this issue.

Ohio Farmers also seeks a summary ruling that DGIA and the Miners made the following misrepresentations on the their application to Ohio Farmers: (1) that the International truck was owned and registered to an insured; (2) that the International truck was to be used solely for farming; (3) that the Miners had signed the application for insurance; and (4) that Hotler did not have a history of moving violations.  In its motion for summary judgment, Ohio Farmers states that "because of [DGIA's] status as insurance broker, this Court need not endeavor to determine whether it was the Miners, [DGIA], or both that generated the misrepresentations."  As discussed above,

-9-

however, this court has not made a determination that DGIA was acting as insurance broker for the Miners, and on the record before it this court cannot determine the parties responsible for such misrepresentations, if such misrepresentations were indeed made.  Therefore, as Ohio Farmers concedes, in the absence of a finding that DGIA was working as an agent of the Miners, a determination as to the alleged misrepresentations on the application cannot be made at this time.

IT IS THEREFORE ORDERED:

     (1) Plaintiff's Motion for Summary Judgment (#65) is DENIED.

     (2) Defendant Frimml's Motion to Strike (#84) is denied as MOOT.

     (3) This case remains set for a Final Pretrial Conference on May 25, 2006, and a jury trial on June 5, 2006.

ENTERED this <u>19th</u> day of December, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE